# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAFETY-KLEEN SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-10645 |
| ) | |
| DAVID G. WOODS, PENNSTAR, LLC, ) | |
| and COOLANTS PLUS, INC., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF SAFETY-KLEEN SYSTEMS, INC.'S REPLY TO DEFENDANT DAVID G. WOODS'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

SAFETY-KLEEN SYSTEMS, INC.

By its attorneys,

/s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr. (BBO# 659322)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: 617-994-5700
Facsimile: 617-994-5701
patrick.curran@ogletree.com

Dated: April 12, 2018

In his Opposition to Plaintiff Safety-Kleen Systems, Inc.'s Motion for Preliminary Injunction, Defendant David G. Woods argues that the Motion should be denied because the Confidentiality and Non-Solicitation Agreement that Safety-Kleen is seeking to enforce is not supported by consideration, because its restrictive covenants do not protect legitimate business interests and are overbroad, and because the balance of harms and the public interest do not favor issuing an injunction. As we demonstrate below, however, all of Mr. Woods's arguments are entirely without merit, and reflect serious misconceptions about the applicable law, the relevant contractual language, or both. Accordingly, and for the reasons set forth in Safety-Kleen's opening Memorandum, the Motion for Preliminary Injunction should be granted.

## I.      The Agreement is supported by consideration.

In his Opposition, Mr. Woods states that "continued employment is not regarded as consideration" for a restrictive covenants agreement in the employment context, relying principally on *IKON Office Solutions, Inc. v. Belanger*, 59 F. Supp. 2d 125 (D. Mass. 1999). *See* Opp. at 4. Subsequent decisions by this and other courts applying Massachusetts law have refused to follow *IKON Office Solutions* on this point, holding that it is inconsistent with Massachusetts law and that continued employment is sufficient consideration for such an agreement in Massachusetts. *See, e.g.,* *Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 231-32 (D. Mass. 2011) (Casper, J.); *EMC Corp. v. Donatelli*, No. 091727BLS2, 2009 WL 1663651, at *6 (Mass. Super. Ct. May 5, 2009) (Neel, J.); *see also American Well Corp. v. Obourn*, Civil No. 15-12265-LTS, 2015 WL 7737328, at *1 (D. Mass. Dec. 1, 2015) (Sorokin, J.) (noting that "subsequent decisions have declined to rely upon *IKON* for the proposition that continued employment provides insufficient consideration" for a non-competition agreement); *accord Boston Scientific Corp. v. Mikelle Mabey*, 455 Fed. Appx. 803, 805-06 (10th Cir. 2011) (applying Massachusetts law, declining to follow *IKON*, and rejecting the district court's holding that at-will employment is insufficient consideration

1

for a post-employment restrictive covenant); *PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1222-23 (M.D. Fla. 2012) (declining to follow *IKON*, noting that it "has been met with disapproval," and holding that, under Massachusetts law, continued employment was sufficient consideration for a restrictive covenants agreement).

In *Donatelli*, for example, the plaintiff (EMC Corporation) was attempting to enforce a non-competition covenant that Donatelli had signed fifteen years after he began working for the EMC. 2009 WL 1663651, at *6. Relying principally on *IKON*, Donatelli argued that the covenant was unenforceable for lack of consideration because "an at will employee who receives a noncompete after the start of the employment relationship must get something more than just continued employment for the noncompete to be enforceable." *Id.* The court rejected that argument, holding that "to the extent that *IKON* stands for the proposition that, on the facts of that case, mere continuation of defendant's existing employment was not sufficient, the Court concludes that *IKON* does not reflect current Massachusetts law." *Id.* In support of that holding, the court cited three decisions by Massachusetts appellate courts – including two by the Supreme Judicial Court – holding that continued employment is sufficient consideration for a restrictive covenants agreement. *See id.* (citing *Economy Grocery Stores v. McMenamy*, 290 Mass. 549, 552 (1935), *Sherman v. Pfefferkorn*, 241 Mass. 468, 473 (1922), and *Wilkinson v. QCC, Inc.*, No. 99-P-1854, 53 Mass. App. Ct. 1109, 2001 WL 1646491 (Mass. App. Ct. Dec. 21, 2001) (unpublished decision)).

Likewise, in *Optos*, Judge Casper noted that the Supreme Judicial Court (in *Sherman* and *McMenamy*) had "recognized the doctrine that continued employment alone may suffice to support non-competition or other restrictive covenants," and that while *IKON* had "questioned the current validity of the doctrine, . . . . Massachusetts courts have subsequently reasserted the doctrine's health with regard to interpreting whether restrictive covenants are enforceable." 777 F. Supp. 2d at 231-32 (citing *Wilkinson*, 2001 WL 1646491, at *1, *Donatelli*, 2009 WL 1663651, at *6, and *Lunt*

*v. Campbell*, Civil Action No. 07-3845-BLS2, 2007 WL 2935864, at *4 (Mass. Super. Ct. 2007));

*see also Inner-Tite Corp. v. Brozowski*, No. 20100156, 2010 WL 3038330, at *16 (Mass. Super. Ct.

Apr. 14, 2010).[1] And in fact, in the years since *Optos* was decided, courts applying Massachusetts

law have continued to confirm the health and validity of the doctrine that continued at-will

employment is sufficient consideration to support post-employment restrictive covenants. *See, e.g.*,

*Boston Scientific Corp.*, 455 Fed. Appx. at 805-06; *American Well Corp.*, 2015 WL 7737328, at *1;

*PartyLite Gifts*, 895 F. Supp. 2d at 1222-23; *ABM Indus. Groups, LLC v. Palmarozzo*, No.

1784CV00819BLS2, 2017 WL 2292744, at *2-3 (Mass. Super. Ct. March 30, 2017); *ISO Claims*

*Partners, Inc. v. Cassavoy*, No. SUCV2017575, 2017 WL 2233502, at *6 (Mass. Super. Ct. March

20, 2017); *Mancuso-Norwak Ins. Agency, Inc. v. Rogowski-Verrette Ins. Agency, LLC*, No.

WOCV201201054C, 2012 WL 6629644, at *3 (Mass. Super. Ct. Nov. 8, 2012). By contrast, only

two courts applying Massachusetts law – and none in decisions issued after 2005 – have followed

*IKON*'s approach to the issue. *See Engineering Mgmt. Support, Inc. v. Puca*, No. MICV

200501082L, 2005 WL 1476462, at *1 (Mass. Super. Ct. Apr. 11, 2005); *Rellstab v. John Hancock*

*Fin. Servs, Inc.*, No. 011281B, 2004 WL 1050748, at *1 (Mass. Super. Ct. March 24, 2004).[2]

The other cases that Mr. Woods cites in support of his argument that continued employment

is not sufficient consideration for a restrictive covenants agreement provide no support for it. In

*Sentry Insurance v. Firstein*, 14 Mass. App. Ct. 706, 707-08 (1983), for example, the Appeals Court

affirmed the trial court's decision to deny the plaintiff's request for an injunction not because its

---

[1] As the Tenth Circuit observed in *Boston Scientific*, the *IKON* court's refusal to follow the Supreme Judicial Court's "most recent relevant decision" was contrary to the rule that a federal court sitting in diversity "may not predict that a state supreme court will overrule its own precedent in the 'complete absence of any indication *from that court* of its inclination to do so.'" 455 Fed. Appx. at 805-06 (emphasis in original) (quoting *Salt Lake Tribune Publishing Co. v. Management Planning*, 454 F.3d 1128, 1134 (10th Cir. 2006)); *accord Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 74 (1st Cir. 2001).

[2] In neither of these cases did the respective courts analyze the issue or consider the binding precedent that *IKON* had declined to follow; rather, they merely stated that (or questioned whether) continued employment was insufficient, and cited *IKON*. *See Engineering Mgmt. Support*, 2005 WL 1476462, at *1; *Rellstab*, 2004 WL 1050748, at *1.

non-solicitation covenant with the defendant was unenforceable for lack of consideration, or for any other reason, but rather because the trial court had found that the defendant had not solicited anyone in violation of the covenant.[3] In *First Eastern Mortgage Corp. v. Gallagher*, No. 943727, 1994 WL 879546, at \*1 (Mass. Super. Ct. July 21, 1994), although the court noted that the defendant had signed the agreement five years after his term of employment began, its refusal to issue the injunction was based primarily on its conclusion that the good will at issue belonged to the defendant, rather than the plaintiff, and then also on the fact that the defendant had signed the agreement on pain of losing his job (a circumstance for which there is no evidence here).[4]

Mr. Woods also suggests that the continued employment he was offered and provided was insufficient consideration for the covenants because it was employment at will. *See* Opp. at 5. He cites no authority for this proposition, and there is none. *See id.* On the contrary, courts applying Massachusetts law in this context have not required that employment (continued or otherwise) be for a definite term in order to qualify as consideration for a restrictive covenant, and have made clear that continued at-will employment is sufficient. *See, e.g.*, *ABM Indus. Groups*, 2017 WL 2292744, at \*3 (holding that "[c]ontinued at-will employment is sufficient consideration to support a non-compete agreement in Massachusetts"); *Inner-Tite Corp.*, 2010 WL 3038330, at \*16, 19

---

[3] The Appeals Court did say that the trial court had been justified in construing the covenant strictly against the plaintiff – i.e., by holding that the non-solicitation covenant barred the defendant from accepting business from customers that he was barred from soliciting and had not solicited – in part because the plaintiff had drafted the agreement, and in part because it was "a post-employment restraint." 14 Mass. App. Ct. at 707. But it did not say or even imply that the covenant was unenforceable, or that it lacked consideration, for that or any other reason – on the contrary, it treated the covenant as enforceable according to its terms. *See id.* Here, of course, Safety-Kleen is not arguing that Mr. Woods is barred from accepting business from customers that he is barred from soliciting, so long as he does not solicit that business; rather, it is arguing only that Mr. Woods is barred from soliciting the customers described in his Agreement, in accordance with its plain terms.

[4] In this section of his argument, Mr. Woods cites another Superior Court decision, *Metropolitan Removal Co. v. D.S.I. Removal Specialists, Inc.*, 2006 Mass. Super. LEXIS 68 (2006) for the proposition that a court may refuse to enforce a restrictive covenant when it "prohibit[s] the employee from taking their learned skills with them to new employment, which would inhibit the public's interest in competition"). But the restrictive covenants at issue here do not in any way prohibit Mr. Woods from taking and using his "learned skills" for Coolants Plus, PennStar, or any other employer. *See* Cekella Aff., Exh. 1. Rather, they merely require that he not solicit or attempt to solicit business for one year from a limited subset of Safety-Kleen's customers, and that he not use or disclose Safety-Kleen's Confidential Information. *See id.* There is no question that Mr. Woods can use his skills as a salesperson without violating those provisions.

(holding, with respect to an at-will employee, that continued employment was sufficient consideration to support a non-competition agreement); *see also Boston Scientific Corp.*, 455 Fed. Appx. at 805-06 (rejecting the district court's holding that at-will employment is insufficient consideration for a post-employment restrictive covenant); *Donatelli*, 2009 WL 1663651, at *6 (rejecting defendant's argument that an "'an at will employee who receives a noncompete after the start of the employment relationship must get something more than just continued employment for the noncompete to be enforceable'"); *Wilkinson*, 2001 WL 1646491, at *1 (noting that Massachusetts case law "does not suggest that imposition of a noncompetition covenant on an already employed at-will employee is unenforceable").

Finally, even if Safety-Kleen's continued at-will employment of Mr. Woods were not sufficient consideration for the restrictive covenants agreement – and it clearly is – it is not the only consideration that Safety-Kleen provided him. Rather, in the Agreement, Safety-Kleen also promised to disclose to him its Confidential Information. *See* Cekella Aff., Exh. 1 at 1. In *Donatelli*, the court held that such a promise, when made in a restrictive covenants agreement, constituted "evidence of consideration" in support of the agreement. 2009 WL 1663651, at *6; *see also Optos*, 777 F. Supp. 2d at 232 (holding that promise of access to employer's confidential information provided consideration for restrictive covenants agreement). In addition, Safety-Kleen also promised to allow Mr. Woods to participate in the 2017 Kleen Performance Products Variable Pay Plan – which, as Mr. Woods acknowledges, the Company did in fact allow him to participate in after he signed the Agreement. *See* Opp. at 2.

In sum, the Agreement is supported by adequate consideration because continued at-will employment provides sufficient consideration for a restrictive covenants agreement under Massachusetts law, and because it is in any case supported by additional consideration.

## II.     The Agreement protects Safety-Kleen's legitimate business interests.

Mr. Woods argues that the non-solicitation and confidentiality covenants in his Agreement with Safety-Kleen cannot be enforced because they do not protect its legitimate business interests in preserving its trade secrets and confidential information, and instead are designed and intended only "to impede competition." *See* Opp. at 6-9. That argument is completely unfounded. First, even if it were true that Mr. Woods did not have access to any of the Company's confidential information – and it is not true, as we demonstrated in our initial Memorandum and show again below – he offers nothing to counter Safety-Kleen's evidence that the non-solicitation provision is necessary to protect the Company's good will with its customers. *See* Cekella Aff. at ¶¶ 14, 19-24.  The protection of customer good will, of course, is a legitimate business interest that an employer may protect through the use of a restrictive covenant agreement. *See, e.g.*, *Borden & Remington Corp. v. Banisch*, No. A9901270, 1999 WL 1266161, at *2-3 (Mass. Super. Ct. Oct. 18, 1999).

Next, Mr. Woods argues that the information he was provided with access to at Safety-Kleen was not "confidential," and therefore was not the legitimate subject of protection by means of a non-solicitation agreement, because it did not qualify as a "trade secret." *See* Opp. at 7 (citing and quoting *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736 (1970) for the definition of what constitutes a "trade secret" under Massachusetts law). But information may be confidential without rising to the level of a trade secret; and the protection of confidential information that does not qualify as a trade secret constitutes a legitimate business interest that a valid restrictive covenant may protect. *See Boulanger v. Dunkin' Donuts, Inc.*, 442 Mass. 635, 641 (2004); *Bard v. Intoccia*, No. 94-11568Z, 1994 WL 601944, at *3 (D. Mass. Oct. 13, 1994). And the evidence shows that Mr. Woods had access, through SalesForce and otherwise, to information that Safety-Kleen treated and protected as confidential, including confidential information concerning its sales projections, sales records, pricing information, and sales and marketing

strategies. *See* Cekella Aff. at ¶¶ 9-11, 14-15, 21. The Agreement's restrictive covenants are narrowly tailored to protect this information, and the Company's good will with its customers, and they are therefore fully-enforceable.[5]

Finally, Mr. Woods asserts that the "sole purpose" of the non-solicitation covenant is to "impede competition." Opp. at 8. He cites no evidence for that assertion, and there is none. It is contradicted, furthermore, by the plain language of the covenant itself, which strictly limits the scope of the restriction to efforts by Mr. Woods, directly or indirectly, to solicit a narrowly-defined group of Customers – i.e., those with whom Mr. Woods had Material Business Contact during the last two years of his employment – for the purpose of doing one specific thing: "providing services that are the same as or substantially similar to those provided in the Business" of the Company. *See* Cekella Aff., Exh. 1 at 4.[6] The covenant does not prevent Mr. Woods from soliciting a wide variety of entities, including without limitation (a) entities that do not qualify as "Customers" under the definition in the Agreement, (b) entities that do qualify as Customers, but with whom he did not have Material Business Contact. *See id.* Even as to those Customers with whom he did have Material Business Contact, the Agreement does not prevent Mr. Woods from responding to inquiries about products and services that they direct to him, without his solicitation. *See id.*[7] Thus,

---

[5] Mr. Woods notes that "an employee may carry away and use the general skill and knowledge gained during his employment, and . . . may use information gained during his former employment unless that information was generally understood to be confidential." Opp. at 8. That is true – but it does not in any way render the restrictive covenants in his Agreement unenforceable. The confidentiality and non-solicitation provisions of the Agreement do not prevent Mr. Woods from using his "general skill and knowledge" on behalf of his new employers. *See* Cekella Aff., Exh. 1 at 2-4. Rather, they merely prevent him from using or disclosing "Confidential Information" – a category of information that is narrowly defined in the Agreement to exclude his general knowledge and information – and from soliciting a specific subset of the Company's Customers. *See id.* The principle that an employee may "carry away and use" his general skill and knowledge is therefore not implicated here.

[6] All of the cases that Mr. Woods cites on this point, critically, involved non-competition agreements – which by their nature are capable of being directed much more broadly at "ordinary competition" than non-solicitation covenants of the kind at issue in this case. *See Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 102 (1979) (cited in Opp. at 9); *Marine Contractors Co., Inc. v. Hurley*, 365 Mass. 280, 287-88 (1974) (cited in Opp. at 9); *Richmond Bros., Inc. v. Westinghouse Broadcasting Co.*, Inc., 357 Mass. 106, 111 (1970) (cited in Opp. at 8-9); *Tyler Techs., Inc. v Reidy*, No. 064404BLS1, 2006 WL 4119598 (Mass. Super. Ct. Oct. 30, 2006) (cited in Opp. at 8).

[7] Accordingly, the concern that Mr. Woods expresses about customers having "'complete freedom in choosing the entity' they wish to handle their blended oil distribution needs" is not implicated by the restrictive covenants in his

the Agreement's non-solicitation covenant does not have the purpose or effect of "extinghish[ing]" competition," and instead is narrowly tailored to protect, for a limited period of time, Safety-Kleen's customer good will and confidential information.

## III.    The non-solicitation covenant is reasonably limited in time and scope.

Mr. Woods states that the one-year term of the non-solicitation provision is "excessive" because it constitutes a "moratorium upon Mr. Woods' ability to work in the industry in the area [in] which he lives," and because he was not offered "severance" during the non-solicitation term. Opp. at 9. But the provision does not prevent Mr. Woods from working in any industry, or in any geographic area, for any period of time. It rather merely prevents him from soliciting, for one year, the specific entities that he had Material Business Contact with – and as to whom he therefore had access to Safety-Kleen's customer good will and confidential information – during the last two years of his employment. Massachusetts law, furthermore, currently does not require employers to pay former employees during the term of their post-employment restrictive covenant periods in order to enforce the terms of the covenant. Accordingly, and for the reasons set forth in our original brief, the Agreement's restrictive covenants are reasonable in scope and duration.

## IV.    Mr. Woods's other arguments that the Agreement is unenforceable are entirely without merit.

Mr. Woods argues that his Agreement is not enforceable because he signed it "under extreme duress for fear that he would lose his job for failure to sign." *See* Opp. at 5. Again, he cites no authority in support of this argument, and the relevant authority contradicts it. *See, e.g.*, *ABM Indus. Groups*, 2017 WL 2292744, at *3 (holding that "[t]he fact that [defendant] was told he could not continue to work for ABM if he did not sign the agreement does not show that the contract is voidable on the grounds of economic duress"). Indeed, "[m]erely urging another party to accept a

---

Agreement. *See* Opp. at 9 (quoting *Tyler*, 2006 WL 4119598). Customers are free to choose Coolants Plus or PennStar over Safety-Kleen if they wish, through Mr. Woods or another Coolants Plus/PennStar employee, as they choose, and the Agreement contains nothing to prevent them from doing so. *See* Cekella Aff., Exh. 1.

deal that is less generous than they would like, and threatening not to do business with them if they do not," does not constitute "duress even if the demand is made of someone in difficult financial circumstances." *Id.* (citing *Boston Med. Ctr. v. Secretary of Exec. Office of Health & Human Servs.*, 463 Mass. 447, 464, 468-69 (2012) and *Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 637 (2007)).

Mr. Woods fares no better with his other argument against the Agreement's enforceability, which is that it cannot be enforced because although he signed it, Safety-Kleen did not. *See* Opp. at 5. Under Massachusetts law, "'a signature is not always necessary to create a binding agreement,'" and mutuality of assent may be shown by a signature or by other means, including the conduct of the parties. *Schwenk v. Auburn Sportsplex, LLC*, 483 F. Supp. 2d 81, 86 (D. Mass. 2007); *see Haufler v. Zotos*, 446 Mass. 489, 498-99 (2006) (holding that "[a] written contract, signed by only one party, may be binding and enforceable even without the other party's signature if the other party manifests acceptance"). Here, Mr. Woods demonstrated his assent to the Agreement by signing it, and Safety-Kleen demonstrated its assent by (among other things) continuing to employ Mr. Woods, permitting him to participate in the 2017 Kleen Performance Products Variable Pay Plan, and providing him with access to its Confidential Information. The Agreement is therefore enforceable against Mr. Woods, even though Safety-Kleen did not sign it. *See, e.g.*, *Lease Am. Org., Inc. v. Rowe Int'l Corp.*, 94 F. Supp. 3d 85, 90-91 (D. Mass. 2015) (rejecting signing-party's argument that contract was unenforceable because the other party had not signed it, because "both parties manifested an acceptance" of the agreement).

## V.      The balance of harms favors issuing an injunction.

Mr. Woods states that Safety-Kleen will not suffer irreparable harm without an injunction because "[t]here have been no customers taken by Mr. Woods from the Plaintiff that would violate the agreement." Opp. at 10. It may be true that Mr. Woods has not yet taken any Customers, but that is irrelevant to whether his continued solicitation of Customers whom the Agreement bars him from

soliciting constitutes irreparable harm. Courts have routinely recognized that, where there is evidence that an employee has engaged in past solicitation of customers in violation of a non-solicitation provision, there is a likelihood of irreparable harm sufficient to justify the issuance of a preliminary injunction. *See, e.g., Advanced Micro-Devices v. Feldstein*, No. CV13-40007-TSH, 2013 WL 10944934, at *12 (D. Mass. May 15, 2013); *Darwin Partners v. Signature Consultants, LLC*, No. 00-0277, 2000 WL 33159238, at *5 (Mass. Super. Ct. March 24, 2000). Here, the evidence clearly shows that Mr. Woods has solicited multiple Customers in violation of his Agreement, and that he has attempted to engage in subterfuge to do so. The harm to Safety-Kleen's customer good will caused by such conduct is primarily non-economic in nature, furthermore, since it affects the Company's reputation and relationships with its customers in ways that are impossible to calculate or quantify. *See, e.g., K-Mart Corp. v. Oriental Plaza*, 875 F.2d 907, 915 (1st Cir. 1989); *Perficient, Inc. v. Priore*, No. 1:16-cv-10470-ADB, 2016 WL 1716720, at *7 (D. Mass. Apr. 26, 2016) (Burroughs, J.).

Mr. Woods, by contrast, will not suffer any cognizable harm, since the preliminary injunction merely requires him to abide by the terms of his Agreement. *See Advanced Micro Devices*, 2013 WL 10944934, at *13. Indeed, the harm that Mr. Woods claims to anticipate if the Court enforces his Agreement – i.e., that he will "lose his job with his employer and will be deprived of his ability to earn a living" – reflects a basic misunderstanding of what the Agreement actually provides. *See* Opp.at 10. Nothing in the Agreement, or in the preliminary injunction that Safety-Kleen has requested, would require the Corporate Defendants to terminate Mr. Woods's employment, or would prevent Mr. Woods from competing with Safety-Kleen in the industrial and automotive lubricants industry by soliciting business from customers not covered by his Agreement, or by accepting business from any customers. *See* Cekella Aff., Exh. 1 at 4; *see also Perficient*, 2016 WL 1716720, at *8 (holding that balance of hardships favored employer, where non-

competition provision prevented defendant from working for or providing products or services to clients or prospective clients with whom he had contact during his last year of employment). It is not a non-competition agreement – it is a non-solicitation agreement, the terms of which are limited to exclude customers with whom Mr. Woods did not have Material Business Contact on behalf of Safety-Kleen. Accordingly, the balance of harms clearly favors the issuance of an injunction.

**VI.     The Public Interest Favors Enforcing The Non-Solicitation Covenant.**

Mr. Woods states that enforcing the non-solicitation covenant is not in the public interest because the "covenant seeks to strip a man of his livelihood," and because it is designed "to protect the Plaintiff from competition." Opp. at 9-10. As we have shown above, however, the plain language of the covenant itself demonstrates that its design, intent, and effect is not to prevent Mr. Woods from working in the industry, or to prevent him from competing with Safety-Kleen – on the contrary, it permits him to work for Safety-Kleen's competitors, to solicit business from entities who are not Safety-Kleen Customers or who are Safety-Kleen Customers with whom he did not have Material Business Contact, and to accept business from any entity without restriction. Rather, the covenant simply serves Safety-Kleen's legitimate interest in protecting its confidential information and customer good will by preventing Mr. Woods, for one year, from engaging in the specific activity that threatens those interests – i.e., soliciting the Customers that he had Material Business Contact with. Accordingly, and because the public interest favors enforcing valid agreements that protect legitimate business interests, the public interest favors enforcing the non-solicitation covenant at issue here. *See, e.g., Avaya, Inc. v. Ali*, No. CIV.A. 12-100660-DJC, 2012 WL 2888474, at *9 (D. Mass. July 13, 2012).

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 12, 2018, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

/s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr.

33721413.1