UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAFETY-KLEEN SYSTEMS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-10645-ADB |
| DAVID G. WOODS, PENNSTAR, LLC, and COOLANTS PLUS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF SAFETY-KLEEN SYSTEMS, INC.'S OPPOSITION TO DEFENDANTS PENNSTAR, LLC'S AND DEFENDANT COOLANTS PLUS, INC.'S MOTION TO DISMISS**

Defendants PennStar LLC and Coolants Plus, Inc. (collectively, the "Corporate Defendants") have sought dismissal of this action on the grounds that this Court does not have personal jurisdiction over them. As we explain below, the Corporate Defendants' arguments for dismissal badly mischaracterize and misconstrue the relevant facts and governing legal principles. Those facts and principles, properly understood, show that the Court clearly has jurisdiction over PennStar and Coolants Plus because Plaintiff Safety-Kleen System, Inc.'s claims against them are related to their Massachusetts activities, because they purposefully availed themselves of this forum, and because the Court's exercise of jurisdiction over them is reasonable under the circumstances. Indeed, the evidence that Safety-Kleen has acquired to date, without the benefit of discovery, establishes that Coolants Plus and PennStar, through their high-level officers, approved, encouraged, and directed David Woods's conscious and intentional efforts to violate his contractual obligations to Safety-Kleen – a Massachusetts-based company – by soliciting customers that he had

significant and material business contacts with on behalf of Safety-Kleen during his employment with the Company.

Coolants Plus also seeks dismissal of the causes of action that Safety-Kleen has asserted against it, arguing that the Company has failed to state a claim on which relief can be granted. Its arguments for dismissal are entirely without merit, however, because they fail to account for allegations in the Complaint that contradict them – including specific allegations that concern the knowing and blatant participation of Coolants Plus's President, Chief Executive Officer, and Chief Operating Officer in the illegal conduct at issue. Accordingly – and as we explain in detail below – Coolants Plus's motion to dismiss for failure to state a claim should be denied.

**Background**

Defendant David G. Woods worked for Plaintiff Safety-Kleen Systems, Inc. ("Safety-Kleen," or the "Company) as a Distributor Sales Executive from August 1, 2016, through December 22, 2017. *See* Affidavit of Larry Cekella ("Cekella Aff.") at ¶ 12. Safety-Kleen, a leading provider of environmental services, is based and has its principal office in Norwell, Massachusetts. *See id.* at ¶ 4; Second Affidavit of Patrick M. Curran, Jr. (April 25, 2018) ("Curran 2nd Aff."), Exh. 1. As a Distributor Sales Executive for Safety-Kleen, Woods was responsible for selling and marketing the Company's blended lubricant products to distributors and other customers and potential customers of Safety-Kleen in Massachusetts and other states. *See* Cekella Aff. at ¶ 12.

On or about March 21, 2017, Woods executed a Confidentiality and Non-Solicitation Agreement with Safety-Kleen (the "Agreement"). *See* Cekella Aff. at ¶ 18 & Exh. 1. The Agreement contains a choice of law clause, which provides that the "Agreement shall be construed and regulated under and by the laws of the State of Massachusetts." *See id.*, Exh. 1 at ¶ 12. The Agreement also contains a forum selection clause, in which the parties chose the state or federal courts "located in or serving Norwell, Massachusetts" as the forum for actions or proceedings

arising under the Agreement. *See id.* In addition, the parties to the Agreement stipulated that the state and federal courts in Massachusetts would have personal jurisdiction over each of them, and that venue in the Massachusetts courts would be proper, in any such action or proceeding. *See id.*

Woods resigned voluntarily from his employment with Safety-Kleen on December 18, 2017, and his last day at the Company was December 22, 2017. *See* Cekella Aff. at ¶¶ 25-26. Thereafter, he began working as a salesperson for Defendant PennStar, LLC ("PennStar"), a subsidiary of Defendant Coolants Plus, Inc. ("Coolants Plus"). *See id.* at ¶ 26 & Exh. 4; *see also* Affidavit of James P. Drozdowski ("Drozdowski Aff.") at ¶¶ 7-8 & Exhs. 1-4; Affidavit of Patrick M. Curran, Jr. (April 3, 2018) ("Curran 1st Aff."), Exh. 1. Both Coolants Plus and PennStar compete with Safety-Kleen in the business of providing oil solutions and cleaning solutions to distributors and other customers. *See* Cekella Aff. at ¶¶ 7-8; *see also* Curran 1st Aff., Exhs. 2-4.

On March 17, 2018, Woods sent an e-mail from his PennStar e-mail account to Kurt Deimer and Darrin Ward. *See* Drozdowski Aff., Exh. 1. Deimer is the President and Chief Executive Officer of Coolants Plus, and Ward is Coolants Plus's Chief Operating Officer. *See* Cekella Aff., Exhs. 2 & 3. Woods sent the March 17 e-mail to Deimer and Ward at their respective Coolants Plus e-mail addresses. *See* Drozdowski Aff., Exh. 1.[1] In the e-mail, Woods recounted to Deimer and Ward his efforts – in conjunction with an individual named Troy Ward – to solicit business from various entities on behalf of CPI and PennStar. *See* Drozdowski Aff., Exh. 1. Troy Ward is, among other things, an Inside Sales Representative for Coolants Plus. *See* Curran 2nd Aff., Exh. 3 at 2. The entities from which Woods had solicited business, according to the account that he provided in the March 17 e-mail, included four Safety-Kleen Customers with whom Woods had had Material

---

[1] Woods also attempted to send a copy of the March 17 e-mail to Robert Perkins, a former employee of Safety-Kleen who, like Woods, resigned voluntarily from his employment with the Company in December 2017 and subsequently went to work for PennStar. *See* Cekella Aff. at ¶ 28; Drozdowski Aff., Exh. 1; Curran 2nd Aff., Exh. 2. He addressed the e-mail to Perkins at his Safety-Kleen e-mail address, however, rather than at the e-mail address that PennStar presumably has provided to him. *See* Drozdowski Aff., Exh. 1.

3

Business Contact on behalf of Safety Kleen during his employment with the Company, and from whom he was therefore precluded from soliciting business during the one-year period following the voluntary termination of his employment relationship with Safety-Kleen under the plain terms of the Agreement. *See* Drozdowski Aff., Exh. 1; Cekella Aff., Exh. 1 at 4 (Section 5).[2] With respect to his efforts to solicit business from one of those Customers – Circle Lubricants, Inc. ("Circle") – Woods stated (among other things) that he had "needed Troy [Ward] here as I had to hide behind him due to Non-Compete." *See id.* He then went on to describe his efforts (through Troy Ward) to solicit business from Circle on behalf of PennStar and Coolants Plus. *See* Drozdowski Aff., Exh. 1. Similarly, with respect to another Safety-Kleen Customer – Nu-Tier Brands, Inc. ("Nu-Tier") – Woods stated that "[t]his is another account I need to hide behind Troy [Ward]," before describing his efforts (through Ward) to solicit business from Nu-Tier on behalf of PennStar and Coolants Plus. *See id.*

On March 19, 2018, Deimer – using his Coolants Plus e-mail account – sent an e-mail to Woods and Darrin Ward (at his Coolants Plus e-mail address) in response to Woods's March 17 e-mail. *See* Drozdowski Aff., Exh. 2 at 1.[3] In that e-mail, Deimer did not ask Woods what "Non-Compete" he had referred to in the March 17 e-mail, or why he had to "hide behind" Troy Ward in soliciting Circle and Nu-Tier as a result of it. *See id.* Nor did he reprimand Woods for using subterfuge to evade his contractual obligations, express surprise at or disapproval of his conduct, or instruct him to refrain from engaging in the same or similar conduct in the future. *See id.* Rather, Deimer thanked Woods for providing him with an "update" of his activities, which he characterized as "good." *See id.*

---

[2] The terms "Customers" and "Material Business Contact" are defined in the Agreement. *See* Cekella Aff., Exh. 1 at 1-3. As used herein, each such term shall have the meaning set forth for it in the Agreement.

[3] Deimer's signature block in the e-mail identified his employer as "Coolants Plus, Inc.," and included his Coolants Plus e-mail address. *See* Drozdowski Aff., Exh. 2.

On March 20, Darrin Ward – using his Coolants Plus e-mail account – sent an e-mail to Woods and Deimer (at his Coolants Plus e-mail address). *See* Drozdowski Aff., Exh. 4 at 1-2. Like Deimer, Darrin Ward did not ask Woods what "Non-Compete" he had referred to in the March 17 e-mail, or why he had to "hide behind" Troy Ward in soliciting Circle and Nu-Tier as a result of it. *See id.* at 2. And like Deimer, he did not reprimand Woods for using subterfuge to evade his contractual obligations, express surprise at or disapproval of his conduct, or instruct him to refrain from engaging in the same or similar conduct in the future. *See id.* On the contrary, he approved Woods's use of Troy Ward to assist him in continuing to solicit the Customers that Woods had described soliciting in his March 17 e-mail, and asked Deimer whether he also would approve the scheme. *See id.* Deimer's response – writing, again from his Coolants Plus e-mail account, and using a Coolants Plus signature block – was unequivocal: "absolutely." *See id.* at 1.[4]

## Argument

### I. The Court Has Personal Jurisdiction Over Coolants Plus and PennStar.

**A. The Legal Standard**

In determining whether it has personal jurisdiction over defendants who, like Coolants Plus and PennStar, are not residents of the forum state, a federal court exercising diversity jurisdiction is "the functional equivalent of a state court sitting in the forum state." *Northern Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005). Accordingly, the Court's jurisdiction over Coolants Plus and PennStar depends on whether the Massachusetts long-arm statute grants jurisdiction and whether the exercise of jurisdiction under that statute is consistent with the Due Process Clause of

---

[4] The factual record summarized above is more than sufficient to support a finding that the Court has jurisdiction over the Corporate Defendants. If the Court disagrees, however, Safety-Kleen respectfully requests leave to conduct limited and expedited jurisdictional discovery (including interrogatories, requests for the production of documents, and depositions of Woods and corporate representatives of Coolants Plus and PennStar). *See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., Inc.*, 794 F. Supp. 2d 265, 267-68 (D. Mass. 2011); *see also Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008) (holding that the "threshold showing" required of a plaintiff seeking limited jurisdictional discovery "is relatively low").

the Fifth Amendment to the United States Constitution. *See Astro-Med, Inc. v. Nihon Kohden Am.*, 591 F.3d 1, 8 (1st Cir. 2009); *see also Mueller Sys., LLC v. Teti*, 199 F. Supp. 3d 270, 277 (D. Mass. 2016) (citing *Astro-Med*, 591 F.3d at 8). Because the Massachusetts long-arm statute is co-extensive with the reach of the Due Process Clause, the Constitutional due process inquiry controls. *See, e.g.*, *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (citing *"Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp.*, 361 Mass. 441, 443 (1972)); *Bohnenberger v. MCBC Hydra Boats, LLC*, Civil Action No. 16-11368-LTS, 2017 WL 3976566, at *4 & n.8 (D. Mass. Sept. 7, 2017); *Mueller Sys.*, 199 F. Supp. 3d at 277 (citing *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 771 (1994)); *see also Copia Communications, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (observing that the First Circuit has treated the "limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause"). Accordingly, in assessing its jurisdiction over the Corporate Defendants, the Court may "sidestep the statutory inquiry and proceed directly to the constitutional analysis." *Daynard*, 290 F.3d at 52; *see Bohnenberger*, 2017 WL 3976566, at *4 (citing *Daynard*, 290 F.3d at 52).[5]

Due process "requires only that, in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such

---

[5] Relying entirely on dictum in *Copia Communications*, the Corporate Defendants ignore the many Massachusetts state and federal cases holding that the long-arm statute's reach is co-extensive with that of the Due Process Clause and, assuming that the statute is more restrictive than the Constitution, they argue at length that the more restrictive standard supposedly imposed by the statute is not satisfied here. *See* Mem. at 3 (citing *Copia*, 812 F.3d at 4); *see generally id.* at 4-5. It is true that in *Copia*, decided in January 2016, the First Circuit noted suggestions in other federal decisions "that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution." 812 F.3d at 4. It did not hold that the statute does in fact impose more restrictive limits, however; and as this Court has observed, the Massachusetts Appeals Court has "[m]ore recently . . . continued to follow Supreme Judicial Court precedent holding that the Massachusetts long-arm statute allows for 'an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States,' and thus analyzed only the constitutional limits of personal jurisdiction." *Bohnenberger*, 2017 WL 3976566, at 4 n.8 (quoting *OpenRisk, LLC v. Roston*, 90 Mass. App. Ct. 1107, 2016 WL 5596005, at *4 (Sept. 29, 2016) (unpublished disposition) (citing *"Automatic" Sprinkler*, 361 Mass. at 443)). Accordingly, and "[i]n light of the Massachusetts precedent on this issue," this Court – like the *Bohnenberger* court – should "'sidestep the statutory inquiry and proceed directly to the constitutional analysis.'" *Id.* (quoting *Daynard*, 290 F.3d at 52); *accord Crowe v. Harvey Klinger, Inc.*, 277 F. Supp. 3d 182, 189 & n.2 (D. Mass. 2017); *CXENSE Inc. v. Maroniene*, Civil Action No. 16-30118-MGM, 2017 WL 3131987, at *4 & n.7 (D. Mass. Jan. 4, 2017).

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 227 (D. Mass. 2011) (observing that "'[c]onstitutional limitations on the exercise of personal jurisdiction over out-of-state defendants are rooted in principles of fundamental fairness'") (quoting *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st Cir. 2010)). In determining whether such "minimum contacts" exist, the district court should "'consider only whether the plaintiff has proffered evidence that, if credited, is enough to support'" findings of the facts essential to personal jurisdiction, and "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining'" whether the plaintiff has made the required showing. *Northern Laminate Sales, Inc.*, 403 F.3d at 22, 24 (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995), and *Daynard*, 290 F.3d at 51). The court must take the plaintiff's proffered "facts 'as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claims,'" and it must consider properly-supported facts put forward by the defendants only to the extent that they are uncontradicted. *Id.* at 24 (quoting *Massachusetts Sch. of Law at Andover v. American Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998)); *see Astro-Med*, 591 F.3d at 8; *Optos*, 777 F. Supp. 2d at 226-27.

Applying these well-established standards, the Court may assert specific jurisdiction over the Corporate Defendants if (1) Safety-Kleen's claims against them arise out of or are "related to" their Massachusetts activities (i.e., "relatedness"), (2) the Corporate Defendants "purposefully availed" themselves of the forum, and (3) the Court's exercise of jurisdiction over them is "reasonable under the circumstances." *Pesmel North Am., LLC v. Caraustar Indus., Inc.*, 754 F. Supp. 2d 168, 172 (D. Mass. 2010); *see Optos*, 777 F. Supp. 2d at 228. Each of these conditions is

7

satisfied with respect to PennStar and Coolants Plus. Accordingly, the Court has jurisdiction over each of the Corporate Defendants, and it should deny their Motion to Dismiss.

### B. Safety-Kleen's claims against the Corporate Defendants easily satisfy the flexible and relaxed "relatedness" requirement.

The First Circuit has emphasized that the relatedness inquiry requires the court to apply a "flexible, relaxed standard" in determining whether claims against an out-of-state defendant arise out of or relate to that defendant's in-state activities. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016); *see Astro-Med*, 591 F.3d at 9; *Optos*, 777 F. Supp. 2d at 233. The relatedness requirement is met, moreover, when the out-of-state defendant's conduct is alleged to have caused tortious injury to an in-state business. *See, e.g.*, *Astro-Med*, 591 F.3d at 9-10; *Van Eperen v. Massachusetts Mut. Life Ins. Co.*, 2017 WL 2362004, at *1 (D. Mass. May 31, 2017) (holding that relatedness requirement was satisfied because "[t]he injury that MassMutual alleges it suffered clearly occurred in Massachusetts"); *Optos*, 777 F. Supp. 2d at 233-35; *see also Upromise, Inc. v. Angus*, Civil Action No. 13-cv-12363, 2014 WL 212598, at *11 (D. Mass. Jan. 21, 2014) (holding that defendant need not be physically present in the forum state to cause injury, and thus to engage in activity for jurisdictional purposes, in the forum).

Thus, in *Astro-Med* and *Optos*, this Court and the First Circuit held that the relatedness prong was satisfied with respect to out-of-state employers who had hired and employed the in-state plaintiffs' former employees in alleged violation of their restrictive covenants agreements with the plaintiffs, even though the former employees had not resided in the forum when employed by the plaintiffs, had not worked for the plaintiffs in the forum, and had not interacted with their new employers in the forum. *See Astro-Med*, 591 F.3d at 9-10, 21-23; *Optos*, 777 F. Supp. 2d at 234. In *Upromise*, similarly, the district court held that because "Upromise's principal place of business is in Massachusetts," it "would feel any harm that arises as a result of Intuition's alleged inducement

8

to breach" the restrictive covenants agreement "in Massachusetts," and it rejected the defendant's argument that relatedness was lacking because "the breach and tortious conduct occurred" outside of Massachusetts, in Florida: "as in *Astro-Med*, [the defendant]'s conduct in Florida was merely ' a cause of the breach of contract – the actual injury – that occurred in the forum state." 2014 WL 212598, at *11 (citing *Astro-Med*, 591 F.3d at 10). More recently – in May 2017 – this Court held that the relatedness requirement was satisfied because the injury that the plaintiff "alleges it suffered clearly occurred in Massachusetts." *Van Eperen*, 2017 WL 2362004, at *1; *see also Optos*, 777 F. Supp. 2d at 234 (holding that plaintiff's claims against its former employee and his new employer were "related" to their conduct in Massachusetts, even though both of them were at all relevant times located outside of Massachusetts, because "their conduct [out of state] was a cause of the alleged breach of the agreement); *Medicus Radiology, LLC v. Nortek Med. Staffing, Inc.*, No. 10-CV-300-PB, 2011 WL 9373, at *3-4 (D.N.H. Jan. 3, 2011) (holding that the relatedness test was satisfied with respect to a Texas company alleged to have tortiously interfered with the New Hampshire plaintiff's restrictive covenant agreement with a Florida doctor by hiring that doctor in Florida, because the injury to the plaintiff occurred in New Hampshire where it was located, even though the Texas company and the doctor had no other connections to New Hampshire).

Likewise, Safety-Kleen claims here that the Corporate Defendants' conduct caused tortious injury to its Massachusetts business interests by wrongfully causing Woods to breach the restrictive covenants in his Agreement with the Company. The injury to the Massachusetts-based business for which Woods formerly worked in a key role has occurred (and will continue to occur) in Massachusetts, where Safety-Kleen is located. That fact by itself is sufficient to satisfy the relatedness requirements under the principles articulated and applied by the First Circuit in *Astro-Med*, and by this Court in *Van Eperen*, *Upromise*, *Optos*, and the other cases discussed above.

9

In a vain effort to avoid these well-established and (in the case of *Astro-Med*) binding precedents, the Corporate Defendants suggest that the rule of *Astro-Med* – i.e., that tortious injury to an in-state business caused by the conduct of an out-of-state defendant is sufficient to satisfy the "relatedness" requirement – has been overruled or called into doubt by the First Circuit's decision in *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54 (1st Cir. 2016), and by the U.S. Supreme Court's decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). *See* Mem. at 8-9. Neither of those cases overruled or is in any way inconsistent with *Astro-Med*, however, and the Corporate Defendants' arguments to the contrary depend on serious misreadings of them.

In *A Corp.*, the plaintiff had alleged and argued that the relatedness prong was satisfied "because [the Arizona defendant] posted A Corp.'s trademark, or a confusingly similar mark, on its website – available in Massachusetts – causing injury to the trademark owner in Massachusetts." 812 F.3d at 59. In assessing that argument, the court did not hold that such an injury, as characterized and described by A Corp., would have failed the relatedness prong. *See id.* at 59-60. Rather, it held that A Corp.'s relatedness argument failed because its allegations established that any business lost as a result of the defendant's conduct would have been lost not by A Corp., but rather by its franchisee in Arizona. *See id.* That loss of business suffered by the franchisee might eventually effect A Corp. in Massachusetts, as the franchisor – but that "indirect," "ancillary," and attenuated effect of out-of-state conduct was "insufficient to fulfill the relatedness prong." *See id.* Here, of course, the Corporate Defendants are interfering in the contractual and advantageous relationships of Safety-Kleen itself, not of a Safety-Kleen "franchisee." And the injury to Safety-Kleen resulting from their conduct does not reach the Company indirectly through a franchisee, or in some other "ancillary" or attenuated way, but instead affects the Company directly by threatening its own contractual rights and the legitimate business interests of the Company itself that those rights are designed to protect. Accordingly, the court in *A Corp.* did not overrule or abandon *Astro-*

10

*Med*, and its decision is entirely consistent both with the rule of that case and with its effect on this one – i.e., that the relatedness prong is satisfied with respect to both of the Corporate Defendants.[6]

The Supreme Court's decision in *Walden*, similarly, is not in any way inconsistent with *Astro-Med* or with a finding of relatedness here. In *Walden*, the Court held that there could be no specific personal jurisdiction in Nevada over a federal agent residing in Georgia, when that agent had confiscated money (allegedly wrongfully) from plaintiffs who lived in Nevada during a flight layover at the Atlanta airport, in the course of their trip from Puerto Rico to Las Vegas. 134 S. Ct. at 1119-20. As the Court emphasized, the plaintiffs were injured in Nevada only because that is where they chose to go after the funds were taken, and where they "desired to use the funds seized." *Id.* at 1125 (noting that the plaintiffs "would have experienced the same lack of access" to the funds" in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had"). *Walden* is distinguishable from this case, and from *Astro-Med*, because the residence of the couple detained in the Atlanta airport was "random, fortuitous, or attenuated." *See Burger King Corp. v. Ruszewicz*, 471 U.S. 462, 475 (1985). When the federal agent confiscated the plaintiffs' money in Georgia, the plaintiffs themselves were in Georgia, and their actual residence was not material or evident. *Walden*, 134 S. Ct. at 1119-20. Here, by contrast, Safety-Kleen was not outside of Massachusetts when the Corporate Defendants engaged in tortious conduct directed at the Company – on the contrary, it was headquartered in Norwell, Massachusetts.

---

[6] In construing *A Corp.*, the Corporate Defendants rely heavily on *Gulf Oil Limited Partnership v. Petroleum Marketing Group, Inc.*, Civil Action No. 17-10813-GAO, 2018 WL 1586029 (D. Mass. March 30, 2018). *See* Opp. 9. The district court in *Gulf Oil* also appears to have misread *A Corp.*, asserting that the First Circuit in that case "implicitly abandoned the *Astro-Med* formulation(s)" by "emphasiz[ing] that for a plaintiff's claims to be 'related to' a defendant's in-forum contacts, something more would be necessary than the bare fact that the plaintiff 'felt the effects' of the defendant's out-of-state conduct at its home within the forum." 2018 WL 1586029, at *6 (citing *A Corp.*, 812 F.3d at 60). As we explain in the text, however, that is not at all what the court of appeals said or even implied in *A Corp.*; rather, it said that the indirect, downstream injury that might eventually be felt by an in-state plaintiff when the defendant's out-of-state conduct harms the plaintiff's out-of-state franchisee was too indirect and attenuated to satisfy the relatedness prong. 812 F.3d at 59-60. The *Gulf Oil* court, like PennStar and Coolants Plus, misreads *A Corp.* and, as a result, badly mischaracterizes the court of appeals' holding. *Compare Gulf Oil*, 2018 WL 1586029, at *6 *with A Corp.*, 812 F.3d at 59-60.

Accordingly, this case, and the *Astro-Med* and *Optos* cases, are quite different from *Walden*, and the Corporate Defendants' assertion that *Walden* undermines or would change the decisions in those cases depends on a badly flawed reading of the case. *See Leibman v. Prupes*, No. 2:14-cv-09003-CAS, 2015 WL 898454, at *9 (C.D. Cal. March 2, 2015) (distinguishing *Walden*).

### C. The Corporate Defendants' voluntary conduct made a lawsuit in Massachusetts against them foreseeable, and therefore easily satisfies the "purposeful availment" requirement.

The "purposeful availment" requirement is satisfied when an out-of-state defendant voluntarily has engaged in an act or series of acts directed toward the forum that makes it foreseeable that its conduct could lead to its involuntary presence before the forum state's courts. *See, e.g.*, *Northern Laminate Sales, Inc.*, 403 F.3d at 25; *ANT v. McPartlin*, Civil Action No. 08-11606-RWZ, 2009 WL 10694263, at *3 (D. Mass. Oct. 21, 2009). The test is satisfied by a plaintiff's showing that it felt the injurious effects of a defendant's tortious act in the forum, and that the defendant's intentional conduct was calculated to cause injury to the plaintiff there. *See, e.g.*, *Noonan v. Winston Co.*, 135 F.3d 85, 90 (1st Cir. 1998); *Phoenix Ins. Co. v. Cincinnati Indemnity Co.*, C.A. No. 16-223S, 2017 WL 3225924, at *5 (D.R.I. March 3, 2017); *Neelon v. Krueger*, Civil Action No. 12-cv-11198-IT, 2016 WL 3390686, at *3 (D. Mass. July 17, 2016).

Here, there is no question that the Corporate Defendants engaged in purposeful, voluntary actions that were calculated to cause injury to Safety-Kleen in Massachusetts, and that therefore made their "involuntary presence before" the courts of Massachusetts foreseeable. *Northern Laminate Sales*, 403 F.3d at 25. The evidence accrued to date, without the benefit of discovery, establishes that the Corporate Defendants (through their high-level officers) approved, encouraged, and directed Woods's conscious and intentional efforts to violate his contractual obligations to Safety-Kleen, a Massachusetts-based business, by soliciting Safety-Kleen Customers that he had worked with during his employment with the Company. *See* Drozdowski Aff., Exhs. 1-4. That same

12

evidence also strongly suggests that the Corporate Defendants were familiar with the contents of Woods's Agreement with Safety-Kleen, which included a Massachusetts forum selection and choice of law clause – in his e-mail to Deimer and Darrin Ward, Woods referred to the Agreement in a casual, shorthand manner that can only be explained by his having previously shared it with them; and their responses to his e-mail, in which they expressed no surprise about, curiosity concerning, or non-familiarity with the contractual restrictions that he had referred to, confirm that they were fully-aware of the Agreement and its contents. *See id.*, Exhs. 2-4. This course of conduct, aimed at Safety-Kleen in Massachusetts, establishes that the Corporate Defendants purposefully availed themselves of this forum such that it was foreseeable that they would be brought into court here to defend their conduct. In fact, its purposeful availment of Massachusetts is more extensive than the conduct that the First Circuit and other courts have found sufficient to satisfy the purposeful availment requirement. In *Astro-Med*, for example, the First Circuit held that the out-of-state defendant, Nihon Kohden, had purposefully availed itself of the forum merely by hiring Astro-Med's former employee, because it had been aware of the risk that the former employee, by working for Nihon Kohden, could violate his restrictive covenants agreement with Astro-Med. 591 F.3d at 10; *see also R&R Auction Co. LLC v. Johnson*, 2016 WL 845313, at *6 (D.N.H. March 2, 2016) (holding that defendant had purposefully availed himself of the New Hampshire forum by interfering in the New Hampshire plaintiff's agreement containing a New Hampshire choice of law clause); *Medicus Radiology*, 2011 WL 9373, at *4-5 (holding that out-of-state defendant had purposefully availed itself of the forum by hiring and employing a doctor outside the forum, while aware that the doctor's employment with the defendant could violate his contractual obligations to the in-forum plaintiff).

The Corporate Defendants argue that Safety-Kleen cannot satisfy the purposeful availment requirement here because it does not allege that either of them "committed any voluntary,

intentional act within or directed to Massachusetts that is relevant to Plaintiff's causes of action," and because it does not allege that PennStar or Coolants Plus could "reasonably foresee being hauled into a Massachusetts court." *See* Mem. at 7-8. The Corporate Defendants are wrong on both counts, however – as demonstrated above, Safety-Kleen points to several voluntary, intentional acts committed by the Corporate Defendants that were directed to Massachusetts and that are relevant to the causes of action asserted in the Complaint, and the facts summarized above show that they could reasonably have foreseen a lawsuit in Massachusetts arising out of their tortious interference in the contracts and relationships of a Massachusetts corporation. *See, e.g.*, *Astro-Med*, 591 F.3d at 10; *R&R Auction Co. LLC*, 2016 WL 845313, at *6; *Medicus Radiology*, 2011 WL 9373, at *4-5.

In sum, the Corporate Defendants voluntarily and purposefully availed themselves of this forum, thus making a lawsuit against them in Massachusetts foreseeable and satisfying the purposeful availment requirement for specific personal jurisdiction.

### D. Personal jurisdiction over the Corporate Defendants in Massachusetts is entirely reasonable.

The third and final prong of the jurisdictional analysis requires the Court to determine whether its assertion of jurisdiction over the Corporate Defendants is reasonable in light of the so-called "gestalt factors" – i.e., (1) the burden on the Corporate Defendants of appearing in Massachusetts, (2) Safety-Kleen's interest in obtaining convenient and effective relief, (3) the Commonwealth's interest in adjudicating the dispute, (4) the judicial system's interest in obtaining an efficient resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *Acronis, Inc., Ltd. v. Lucid8 LLC*, Civil Action No. 11-10772-DJC, 2011 WL 5117669, at *8 (D. Mass. Oct. 26, 2011); *see Astro-Med*, 591 F.3d at 11; *Optos*, 777 F. Supp. 2d at 228. In their Motion, the Corporate Defendants have made no effort at all to show that the Court's assertion of jurisdiction over them would be unreasonable in light of any of these

14

factors – and an examination of the factors clearly demonstrates that the Court may reasonably assert jurisdiction over them.

First, Safety-Kleen's interest in obtaining effective and convenient relief and the relative burden on the Corporate Defendants of litigating in Massachusetts both strongly favor jurisdiction. The Corporate Defendants do not claim that litigating in Massachusetts would impose a meaningful burden on them – and in any case, the burden on the defendant of litigating in a foreign forum "is only meaningful where a party can demonstrate some kind of unusual burden," beyond the typical "burdens of litigating in another forum." *Optos*, 777 F. Supp. 2d at 235-36. The Corporate Defendants do business in many states – indeed, they claim to do business "globally" – and they were able to obtain local counsel and appear in this Court through their counsel at the April 10 hearing. *See* Curran 1st Aff., Exh. 4 at 1. The mere fact that their principal places of business are in Ohio and Pennsylvania does not suggest that litigating in Massachusetts will impose any special or unusual burden on them. *See Acronis*, 2011 WL 5117669, at *8-9 (ordering a Washington company to litigate a lawsuit brought by a Massachusetts company in Massachusetts); *Optos*, 777 F. Supp. 2d at 235-36 (requiring a New Jersey company to litigate in Massachusetts concerning its hiring and employment of a California-resident former employee of a Massachusetts company). Safety-Kleen, on the other hand, chose this forum because that is where the business being harmed is headquartered, and because its closely-related contract claims against Woods are subject to Massachusetts choice-of-law and forum-selection provisions. The Company's choice of this forum is entitled to deference in assessing the gestalt factors; indeed, as the court noted in *Acronis*, "[t]he First Circuit has repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." 2011 WL 5117669, at *9.

In addition, the Commonwealth of Massachusetts has a strong interest in adjudicating claims related to the injuries that the Corporate Defendants conduct has caused to Safety-Kleen's

Massachusetts-based business, including the injury to Safety-Kleen's interests under an Agreement that is governed by Massachusetts law. The Corporate Defendants have not suggested that this Court could not render effective relief in resolving this controversy, or that the courts of another forum would be more effective at resolving the dispute. Finally, while Massachusetts has a strong interest in resolving the controversy, the Corporate Defendants have identified no strong competing interest of Ohio or Pennsylvania law that would warrant a finding that this Court's assertion of jurisdiction over the Corporate Defendants is unreasonable or improper. Accordingly, the remaining three factors all favor a finding that the Court's assertion of jurisdiction over the Corporate Defendants is reasonable. *See Acronis*, 2011 WL 5117669, at *9; *Optos*, 777 F. Supp. 2d at 236; *cf. Blu Homes, Inc. v. Kaufmann*, Civil Action No. 10-11418-DJC, 2011 WL 3290362, at *6-7 (D. Mass. July 29, 2011) (holding that where the final three factors did not favor either side, and the burden-to-defendant and convenience-to-plaintiff factors favored plaintiff's chosen forum, it was reasonable to assert jurisdiction in the forum).

In sum, this Court's assertion of jurisdiction over the Coolants Plus and PennStar satisfies all three prongs of the test for specific jurisdiction, and therefore comports with due process. Accordingly, the Corporate Defendants' motion to dismiss for lack of personal jurisdiction should be denied.

**II.     The allegations in Safety-Kleen's Complaint are more than sufficient to state plausible tortious interference and unfair competition claims against Coolants Plus.**

To survive a motion to dismiss for failure to state a claim, a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "does not require 'detailed factual allegations,'" and it does not create a "probability requirement." *Id.*; *see Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (holding that

16

"[s]pecific facts are not necessary" to state a claim). Rather, the standard requires "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds up on which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 344 U.S. 41, 47 (1957)). Only when the claim "fails to meet this liberal pleading standard is it subject to dismissal on a motion brought pursuant to Rule 12(b)(6). 5B Wright & Miller, Federal Practice & Procedure, Civil § 1356 (observing that the purpose of a Rule 12(b)(6) motion is "to test the formal sufficiency of the statement of the claim for relief," and that such a motion "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case"). Ultimately, a claim for relief "will survive a Rule 12(b)(6) dismissal if 'the facts, evaluated in [the required] plaintiff-friendly manner, contain enough meat to support a reasonable expectation that an actionable claim may exist.'" *Krasnor v. Spaulding Law Office*, 675 F. Supp. 2d 208, 210 (D. Mass. 2009) (quoting *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008)) (alterations in original); *see also Bose Corp. v. Lightspeed Aviation, Inc.*, 691 F. Supp. 2d 275, 278 (D. Mass. 2010) (holding that the Court "must deny a motion to dismiss if, under any theory, the allegations are sufficient to state a cause of action"); *Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009) (holding that a claim may be dismissed at the pleading stage only when "the allegations are so broad, and the alternative explanations so overwhelming, that the claims no longer appear plausible").

Coolants Plus asserts that Safety-Kleen has failed to state claims against it for tortious interference and unfair competition, even under the lenient and permissive standard that governs at this stage of the proceedings, because "[t]he Complaint makes clear that Coolants Plus does not employ Woods and, aside from being alleged to be PennStar's parent company, has no other connection [to] or involvement in the case." *See* Mem. at 10. That argument misses the mark for at

17

least two reasons. First, Coolants Plus does not need to be Woods's employer to interfere tortiously in Safety-Kleen's contractual and advantageous business relations with Woods and with the Company's Customers, or to engage in unfair competition with respect to Safety-Kleen. Rather, to tortiously interfere, it must merely be aware of the contract or business relationship, and then intentionally interfere with the contract or relationship for an improper purpose or by improper means, causing harm or damages; and to engage in unfair competition, it must merely misappropriate the work and expenditures of another in bad faith. *See, e.g.*, *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 397 (1996); *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 812, 815-17 (1990); *Steinberg v. Schnapp*, 899 N.Y.S. 2d 167, 170 (N.Y. App. Div. 2010); *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 833 N.Y.S.2d 138, 140 (N.Y. App. Div. 2007). The existence of an employment relationship between the alleged tortfeasor and the other party to the contract or relationship simply is not an element of either tort.

Second, the facts alleged in the Complaint show that Coolants Plus had substantial involvement in and connection with the circumstances underlying Safety-Kleen's claims, including the specific wrongdoing that is primarily at issue. For example, the Complaint alleges that Woods solicited Safety-Kleen Customers, in violation of his contractual obligations to the Company, on behalf of Coolants Plus, and that the people to whom he reported on his efforts to solicit those Customers – Kurt Deimer and Darrin Ward – were Coolants Plus's President, its Chief Executive Officer, and its Chief Operating Officer. *See* Complaint at ¶¶ 34-35. The Complaint also alleges that Woods discussed with Deimer and Ward – both, again, high-level executives at Coolants Plus – his efforts to "hide behind" another person, Troy Ward, in order to prevent discovery of his illicit and prohibited solicitation of Safety-Kleen's Customers. *See id.* at ¶¶ 36-38. And the Complaint alleges that Coolants Plus's President, Chief Executive Officer, and Chief Operating Officer approved Woods's future use of Troy Ward to assist him in soliciting Safety-Kleen's Customers. *See id.* at ¶¶

18

39-40. These are not "bare conclusory recitations of the elements of each cause of action," as Coolants Plus claims (see Mem. at 11), but detailed allegations of specific facts underlying the tortious interference and unfair competition claims.

In sum, Coolants Plus's arguments that Safety-Kleen has failed to state a claim against it are entirely without merit, and its motion to dismiss on that basis should be denied.

## Conclusion

For all of the foregoing reasons, the Motion to Dismiss filed by Defendants Coolants Plus, Inc. and PennStar, LLC should be denied.

**SAFETY-KLEEN SYSTEMS, INC.**

By its attorneys,

/s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr. (BBO# 659322)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: 617-994-5700
Facsimile: 617-994-5701
patrick.curran@ogletree.com

Dated: April 26, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 26, 2018, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and will be served by e-mail on any non-registered participants identified on the NEF.

/s/ Patrick M. Curran, Jr.
Patrick M. Curran, Jr.

33891570.1